In re William F. KERN II, a/k/a W.F. Kern II, Debtor.

**Bankruptcy No. 83 B 10984 (HCB).**

United States Bankruptcy Court, S.D. New York.

March 26, 1984.

Michael H. Ganz, Hicksville, N.Y., for Manufacturers Hanover Trust Co.; Robert J. Katcher, Hicksville, N.Y., of counsel.

Lawrence A. Grossman, New York City, for William F. Kern II, debtor; Michael Moskowitz, New York City, of counsel.

## DECISION AND ORDER

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

Manufacturers Hanover Trust Company ("Manufacturers"), an unsecured creditor holding approximately 80% of the scheduled debt of William F. Kern II, the debtor, objects to the confirmation of his Chapter 13 plan on the ground that it violates the good faith standard of § 1325(a)(3) of the Bankruptcy Code ("Code"), 11 U.S.C. § 1325(a)(3) (1978).

### I

The debtor filed his Chapter 13 petition and accompanying schedules on July 5, 1983, reflecting an indebtedness of $26,-

129.91,[1] all of which is credit card debt incurred for the purpose of funding the debtor's business, William F. Kern International Inc., an employment agency. The debtor contends this financing scheme was employed only after the Small Business Administration and several banks rejected his applications for business loans.

However legitimate that concept was in its conception, its execution was fraudulent. In applying for extensions of credit, he listed such non-existent assets as a Mercedes Benz, a lien-free house, stocks, bonds and money market fund income. There is no dispute that this falsification was intentional. Kern's only proffered excuse is that an unidentified employee of Manufacturers advised him that the bank did not fully investigate applications for extensions of credit made by pre-existing credit card holders if the applicant had an account with the bank, and that he should add assets to his application in order to raise his credit limit. Kern admits, however, that he employed the same tactics in applying for credit to other banks and makes no claim that he believed that the unnamed employee, if any, had apparent authority from Manufacturers to give such advice.

Kern used the funds obtained through this scheme not only to finance his largely unprofitable business, but also to make payments on past due credit card obligations by borrowing money on one card to make payments on another. Thus, the credit card borrowings were the business' primary source of cash. The debtor's spiralling pyramid of debts finally collapsed when, in 1983, his creditors began to reject his applications for additional credit.

With his petition, the debtor filed a budget and income statement showing his monthly income to be $433 and his wife's as $975, for a total of $1,408 after taxes. After deducting monthly family expenses of $1,235, a cushion of $155 remained. The plan proposed to pay Kern's creditors $121 a month for 36 months, resulting in a 15% plan.

Shortly after filing his petition, Kern obtained a sales position with Friedman's Express, a road transportation concern. Accordingly, he filed an amended income statement to reflect an increase in his after-tax income to $1,415.74 a month. He, however, also withdrew his wife's net income of $975 a month, and made no changes in the proposed payments to creditors even though the increase in his income naturally increased the available cushion. Mr. Kern explained that although his wife has her own income, is the only signator on their apartment lease, and eats and sleeps in the apartment, she contributes nothing to the rent and their daily living expenses, retaining all of her income for herself. According to the debtor, his wife is "old fashioned," believes that a husband is to be a family's sole provider and refuses to pay even a portion of the rent on their apartment even though the lease is solely in her name. Notwithstanding having scheduled her income in the first budget filed with this Court, Kern testified that were he to ask his wife to make a monetary contribution either to everyday household expenses, or to the plan, that she would seek a divorce. He thereby asserts that the July 5, 1983 plan providing for payments of only $121 per month is the best effort that he can make to repay his unsecured creditors.

## II

If the tests of § 1325(a) of the Bankruptcy Code, 11 U.S.C. § 1325(a), (Supp. IV 1980), are met, a Chapter 13 repayment plan is to be confirmed. Upon completion of the payments called for, the debtor is entitled to a discharge of all of his scheduled debt, except for (i) certain long-term debts in which the last payment is due after the date on which the final payment under the plan is due, § 1322(b)(5); and (ii) any debt due to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse of

1. The scheduled debts are as follows:

| | |
|---|---|
| Manufacturers Hanover Trust Company MasterCard and Visa | $ 19,142.33 |
| Bank of New York American Express Gold Card | $ 1,916.23 |
| Chemical Bank MasterCard Gold | $ 5,071.35 |
| | $ 26,129.91 |

child in connection with a separation agreement, divorce decree, or property settlement agreement, § 523(a)(5).

Principal among those tests is the mandate of § 1325(a)(3) that the plan be filed in good faith. Even were all the other tests of § 1325(a)[2] met, a plan may not be confirmed if "there has been an abuse of the provisions, purpose or spirit of [the chapter] in the proposal." *In re Hawkins*, 33 B.R. 908, 911 (Bkrtcy.S.D.N.Y.1983), *quoting In re Terry*, 630 F.2d 634, 635 (8th Cir.1980).

The application of this test must necessarily vary from case to case. The parameters of that application, however, are not unlimited, but, over time have been refined by applicable authority. However distasteful the debt sought to be discharged may be, the non-dischargeability of an intentionally fraudulently procured obligation under § 523(a) of the Code does not, *per se*, preclude confirmation. *Bank*

*of America National Trust and Savings Ass'n v. Slade*, 15 B.R. 910 (Bkrtcy.App. Cal. 9th Cir.1981); *Matter of Spada*, 32 B.R. 105 (Bkrtcy.E.D.Cal.1983); *In re Tramonto*, 23 B.R. 464 (Bkrtcy.W.D.N.Y.1982). Congress, in crafting § 1328, so decided in not exempting such debts from discharge under Chapter 13.

But the presence of such a debt sought to be discharged is a factor of good faith. *E.g., In re Estus*, 695 F.2d 311, 317 (8th Cir.1982).[3] So too is the reasonableness of the debtor's efforts to pay his debts. *In re Hawkins*, 33 B.R. at 911–912. It is the presence of these two factors here that cause concern.

In essence, Kern seeks a discharge of debts incurred through intentional fraud pursuant to a plan that seeks, in effect, to have his creditors bear the brunt of a budget where he pays all living expenses for him and his wife even though his wife can afford to bear her share. While one can

2. Section 1325(a) of the Code provides as follows:
(a) The court shall confirm a plan if—
   (1) the plan complies with the provisions of this chapter and with other applicable provisions of this title;
   (2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;
   (3) the plan has been proposed in good faith and not by any means forbidden by law;
   (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;
   (5) with respect to each allowed secured claim provided for by the plan—
   (A) the holder of such claim has accepted the plan;
   (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
   (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
   (C) the debtor surrenders the property securing such claim to such holder; and
   (6) the debtor will be able to make all payments under the plan and to comply with the plan.

(b) After confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee.

3. The eleven factors set out in *In re Estus* are:
   (1) the amount of the proposed payments and the amount of the debtor's surplus;
   (2) the debtor's employment history, ability to earn and likelihood of future increases in income;
   (3) the probably or expected duration of the plan;
   (4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
   (5) the extent of preferential treatment between classes of creditors;
   (6) the extent to which secured claims are modified;
   (7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;
   (8) the existence of special circumstances such as inordinate medical expenses;
   (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
   (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
   (11) the burden which the plan's administration would place on the trustee.
*In re Estus*, 695 F.2d 311, 317 (8th Cir.1982)

appreciate his wife's desire to conserve her earnings for possible contingencies and her desire to live off her husband's income, there comes a point beyond which creditors should not be required to accept a plan.

Congress did not leave the debtor bridled only by his imagination. *In re Cook,* 3 B.R. 480, 485 (Bkrtcy.S.D.W.Va.1980). For this Court to confirm Mr. Kern's plan as proposed on the basis of his assertion that Mrs. Kern will divorce him if asked to contribute to her own support is simply untenable. To do so would mean forcing Mr. Kern's creditors to subsidize part of her daily living expenses. The Code contemplates no such result. Instead it requires a meaningful budget accompanied by devotion of much of the surplus income to repay creditors. It does not require a set percentage. But it does require the debtor's best efforts. Such are not to be found through a restructuring of family expenses to lessen the surplus and make less available to creditors.

The objection of Manufacturers Hanover Trust Company's to confirmation of the debtor's Chapter 13 plan is sustained and consequently, confirmation of the debtor's plan is denied.

IT IS SO ORDERED.