**In re Theodore Phillip KRESS, Debtor.**

**Bankruptcy No. 85–05542.**

United States Bankruptcy Court,
D. North Dakota.

Dec. 9, 1985.

Richard Nelson, Grand Forks, N.D., Trustee.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the Court on its own Order To Show Cause issued Sua Sponte on September 16, 1985, directing the Debtor to appear and show cause why his Chapter 7 petition should not be dismissed pursuant to the substantial abuse provision of section 707(b) of the Bankruptcy Code. A hearing pursuant to said Order was held on November 12, 1985.

### 1.

The Debtor's case was commenced by petition filed September 9, 1985 and came to the court's attention after an examination of the schedules indicated a monthly take home pay of $7,500.00 and monthly expenses of such an excessive nature as to appear grossly overstated.

From the Debtor's testimony at the hearing it became apparent that confusion existed regarding the Debtor's true anticipated income and the extent of his business expenses incidental to his profession as a free-lance anesthetist. The Court suggested that the Debtor file an Amended Schedule of Current Income and Expenses in order to better clarify any ambiguities. On December 4, 1985 the amended schedules were filed and the schedules together with evidence introduced at the hearing shall serve as a basis for the Court's decision herein.

The Debtor is a free-lance anesthetist working as a subcontractor for Interstate Anesthesia Services of Grafton and Grand Forks, North Dakota. He provides professional services to hospitals in Grafton and Park River, North Dakota and the Minnesota towns of Hallock and Warren.

In his original income schedule filed with his petition he indicated his gross monthly income to be $7,500.00 but at the hearing explained that his income fluctuates over the year and recently has been decreasing due to increased competition. In August 1985 his gross income was $7,008.00, in

John Moosbrugger, Grand Forks, N.D., for debtor.

Eddie Kopperud, Grafton, N.D., for creditor.

September it was $4,860.00 and in October it was $5,800.00. On his amended schedule he shows his monthly gross income to be $5,500.00. The Court concludes from the schedules and the Debtor's testimony that $5,500.00 per month is not a static monthly income figure but rather is reflective of the Debtor's income for one particular month. The Debtor is a professional with a previous history of high income. In 1983 his income was $97,175.00 and in 1984 it was $96,759.00. Using the annual income figures from the two previous years gives the Debtor an average monthly gross income of $8,080.00 for 1983 and 1984. Nothing produced at the hearing indicates that the Debtor's anticipated future income will be dramatically less than what it was in 1983 and 1984 despite a drop in recent months. Even when using $8,080.00 as an annual monthly high and the September 1985 figure of $4,860.00 as a low would give the Debtor an average monthly income of $6,470.00 which the Court believes is far more accurate a reflection of the Debtor's average anticipated future monthly income than the $5,500.00 set forth in his amended schedule. A monthly income of $6,470.00 produces an annual gross of $77,640.00 which is nearly $20,000.00 less than what the Debtor's historical income has been for the preceding two years. The Court cannot and does not ignore the earning capacity which an anesthetist might expect and does not believe the Debtor's anticipated future income will ever be any less than $6,470.00 per month on average.

The Debtor's expense schedule reveals business expenses of $3,454.87 and personal and family living expenses of $2,969.00 per month. His list of business expenses includes a car payment of $338.87, apparently on a 1984 Oldsmobile, the only vehicle listed in his property schedules. The business expenses also list $250.00 for fuel and auto maintenance while his personal expense schedule lists an additional $200.00 for transportation for a total of $450.00 per month for transportation related expenses. Also listed as a business expense is $35.00 per month for auto insurance yet on his personal expenses schedule another $90.00 per month is listed for auto insurance. This would total $1,500.00 per year on a single automobile if correct. The family monthly food bill is listed at $500.00 with another $50.00 listed for laundry and cleaning. Medical and drug expenses are listed at $250.00 per month which, according to hearing testimony includes $100.00 per month for dental and $100.00 per month for contact lenses. Recreation is stated at $200.00 per month. The Debtor's total phone related expense is $335.00 per month which, according to his testimony includes three telephone lines and a payment of $300.00 per month to his wife as a sort of live-in answering service.

■ The Court has difficulty accepting as accurate a monthly automobile insurance expense of $125.00 and total monthly transportation expenses of $450.00. An average monthly food bill of $500.00 for a family of four also strikes the Court as overstated as does the Debtor's averment that monthly medical related expenses are $250.00 per month. For example, it is difficult to conceive how one could spend $1,200.00 per year on contact lenses as the Debtor testified. The phone expenses and recreational expenses are another matter also. The Court has serious questions about the appropriateness of a debtor in Chapter 7 to be paying his wife $300.00 per month to answer the phone and be spending another $200.00 per month on recreation. It is the Court's opinion after a review of the schedules and the testimony that the Debtor's statement of monthly expenses is unreasonably overstated by at least $1,000.00 and his statement of gross monthly income is probably understated by at least the same amount.

The Debtor's total unsecured debt, consisting exclusively of consumer obligations totals $37,927.00.

2.

With the enactment of the Bankruptcy Amendments and Judgeship Act of 1984 debtors no longer have unfettered access to voluntary Chapter 7 relief.

■ Section 707 of the Bankruptcy Code, providing for the dismissal of Chapter 7 cases, was substantially amended by the 1984 Act by the addition of subpart (b):

(b) After notice and a hearing, the court on its own motion and not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

Section 707(b) was enacted as a part of the consumer credit amendments as a means of combating what congress viewed as an abuse of Chapter 7 by consumer debtors who had the ability to pay. Neither the statute as drafted nor its framers meant it as a method of forcing consumer debtors into Chapter 13; rather, it affords the Bankruptcy Court the ability to dismiss a Chapter 7 case where, in consumer cases, substantial abuse exists. *In re White*, 49 B.R. 869 (Bankr.W.D.N.C.1985). The operative language of section 707(b) is "primarily consumer debts" and "substantial abuse". The term "consumer debt" is defined in section 101(7) of the Code as a debt incurred by an individual primarily for a personal, family, or household purpose. Section 707(b), being aimed at abuses in the consumer debtor arena, lends itself to incorporation of the section 101(7) definition of consumer debt, and the Court believes that the section 101(7) definition ought to be applied in section 707(b) reviews.

■ The term "substantial abuse" is more troublesome. It is not defined elsewhere in the Code, and the section itself is devoid of definitive language. Other courts called upon to interpret congressional intent in the passage of section 707(b) have resorted to the attendant legislative history. *In re Grant*, 51 B.R. 385 (Bankr. N.D.Ohio 1985). Our own Court has also resorted to legislative history where the statute in question was ambiguous on its face. *In re Butts*, 45 B.R. 34 (Bankr.D.N. D.1984) (interpreting section 522). The leg-

islative history of an act must be examined to insure that a statute is not applied in a manner contrary to congressional intent which is clearly evidenced in the legislative history of the Act. *North Dakota v. United States*, 460 U.S. 300, 103 S.Ct. 1095, 75 L.Ed.2d 77 (1983); *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). It is arguable that an analysis of the legislative history ought to be undertaken even where a statute appears unambiguous on its face. Our own circuit has upheld the position that, "even though the statute appears clear on its face, inquiry must not stop there, but rather the court must also examine the statutory scheme and legislative history of the Act to determine the scope of coverage". *United States v. Hepp*, 497 F.Supp. 348, 349 (N.D.Iowa 1980); aff'd 656 F.2d 350 (8th Cir.1981). In the present instance, it is necessary to consider the legislative history surrounding enactment of section 707(b) in order to ascertain its scope and intended application with respect to the term "substantial abuse". The decision of *In re Grant*, supra, recounted in great detail the legislative history of the 1984 Consumer Credit Amendments and will not be repeated here except in very summary form because this Court agrees with the analysis set out in that decision.

■ The credit industry in proposing changes in the Bankruptcy Code argued that it was both unfair to creditors and burdensome to the public at large to allow debtors to seek Chapter 7 relief giving little or nothing to creditors where a substantial portion of those debts could be paid out of disposable income. Legislative history suggests that section 707(b) was primarily directed towards this kind of abuse. S.Rep. No. 446 on S. 2000, 97th Cong., 2d Session (1982). Congressman Mike Synar, the Bills sponsor, as well as three of his congressional colleagues made it clear in their floor remarks that by the amendments, Congress was seeking to eliminate a perceived abuse of the bankruptcy system by consumer debtors who have sufficient

future income by which they would be capable of paying back their debts. Congressman Anderson, commenting upon passage of H.R. 5174 inclusive of section 707(b), noted that "a bankruptcy court could dismiss a Chapter 7 filing if, in its opinion, the filing constitutes a "substantial abuse" of the Bankruptcy Code because the debtor is found capable of fulfilling the terms of a Chapter 13 repayment agreement." The foregoing language suggests that the most important criteria in determining whether a particular filing constitutes "substantial abuse" is the debtors ability to make repayment, but this is not the only criteria. More appropriately, a bankruptcy court, when considering whether substantial abuse exists in a given case, ought to consider the totality of the circumstances, bearing in mind that the basic purpose of Chapter 7 is to provide the honest debtor with a fresh start. This is the element of presumption referred to in section 707(b). It merely requires the court to view the facts of a given case in light of a presumption in favor of the debtor, a presumption that he is entitled to Chapter 7 relief. It is not a conclusive presumption, however, but may be rebutted by the facts themselves. The cases of *In re Grant,* supra; *In re Bryant,* 47 B.R. 21 (Bankr.W.D.N.C.1984) and *In re White,* supra, suggest various criteria against which the facts of a case ought to be assessed in considering whether substantial abuse exists sufficient to mandate dismissal under section 707(b). These criteria as gleaned from the foregoing cases are:

1. Whether the debtors have a likelihood of sufficient future income to fund a Chapter 13 Plan which would pay a substantial portion of the unsecured claims;

2. Whether the debtors petition was filed as a consequence of illness, disability, unemployment or some other calamity;

3. Whether the schedules suggest the debtors incurred cash advancements and consumer purchases in excess of their ability to repay them;

4. Whether the debtors proposed family budget is excessive or extravagant;

5. Whether the debtors Statement of Income and Expenses is misrepresentative of their true financial condition.

It is in view of the foregoing criteria with particular emphasis on the ability to repay, that the facts of the instant case are considered. First of all, the Court concludes that the Debtor's obligations do constitute exclusively consumer debts as the term has been previously defined. As previously noted the Debtor is a professional person with a proven earning history of substantial sums. It is unlikely, and the evidence does not establish that he will not continue to earn a very high income in the future. The Debtor's Statement of Monthly Expenses are not accurate and even if accurate their nature and extent strike this Court as extravagant. Even assuming an average monthly gross income of $6,470.00 (which the Court feels is low) affords the Debtor a budget excess of in excess of $1,000.00 per month if one were to eliminate the monthly expense items which appear overstated or excessive. With unsecured debts totalling $37,927.00, the Debtor has the means to pay back his unsecured creditors 100% in just over three years.

The Court concludes that this is a case of substantial abuse of Chapter 7 and that affording the Debtor in this case Chapter 7 relief would be inappropriate and contrary to the intent of Congress.

Accordingly, and for the reasons stated, it is ordered that the Chapter 7 petition of Theodore Phillip Kress filed September 9, 1985 be and is hereby DISMISSED pursuant to section 707(b) of the Bankruptcy Code.