**In re Harold A. RENNER and Karen M. Renner, Debtors.**

**Bankruptcy No. 86–05854.**

United States Bankruptcy Court, D. North Dakota.

Jan. 16, 1987.

Charles L. Chapman, Bismarck, N.D., for debtor.

William J. Daner, Trustee, Bismarck, N.D.

William P. Westphal, U.S. Trustee, Minneapolis, Minn.

**ORDER**

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the court on its own Order to Show Cause issued *sua sponte* on December 22, 1986, directing the Debtors to appear and show cause why their Chapter 7 petition should not be dismissed pursuant to the substantial abuse provisions of section 707(b) of the Bankruptcy Code. In lieu of a hearing scheduled for January 5, 1987, the Debtors at their option elected to respond by affidavit.

The Debtors' case was commenced by petition filed October 3, 1986, and came to the court's attention after an examination of the schedules indicating that from a monthly net income of $1,736.00 the Debtors had monthly expenses of $1,461.00 including a monthly payment of $140.00 against their unsecured debt, suggesting to the court a probable minimum budget surplus of $415.00 per month existed which if contributed to a repayment plan would retire one hundred percent of the $10,708.00 of unsecured debt in just over two years.

The Debtors on January 5, 1987, provided the court with a very thorough affidavit and brief which further explain personal circumstances which were not evident from the petition itself. The facts as gleaned from the petition as well as affidavit are summarized as follows:

Both the Debtors suffer from economically debilitating illnesses. In December, 1984, Harold suffered a heart attack and subsequently underwent open heart surgery in January, 1985. Recuperation lasted until May, 1985, during which time the family's only income was from Harold's disability insurance. Debtor, Karen Renner, has been a victim of multiple sclerosis for many years, her condition now becoming aggravated to a point where she can no longer work and is a recipient of social security benefits.

Due to his heart attack, Harold's employability deminished to a point where he left his former employer and commenced a new position on January 1, 1986, as a salesman for General Equipment and Supplies Co. His income of $1,453.00 includes a draw on commission of $300.00 per month—a sum which is dependent upon sales performance. This sum fluctuates from month to month and recent experience suggests that his draw may well be less than anticipated. Karen's monthly income of $243.00 is solely comprised of social security benefits.

The Debtors' schedule of monthly expenses totalling $1,461.00 includes a $140.00 payment against unsecured obligations—a payment which would be eliminated by Chapter 7 or successful completion of a Chapter 13 plan. Either way, the payment is not truly a monthly expense. They are also apparently making a monthly payment of $100.00 against a bank checking-plus account overdraft. Again this is an unsecured debt which would be subject to discharge in the event of either a Chapter 7 or Chapter 13. Elimination of these two payments suggests a present budget excess of $515.00. Included as a monthly expense item is a monthly medical and drug expense of $100.00. According to their affidavit, Mrs. Renner can anticipate increasing medical problems necessitating increasing expenses for medicine and health care. A good deal of the anticipated health care is not covered by insurance and must be borne by the Debtors themselves. They believe the time is not long off when Karen will need home care assistance. In other respects, their monthly expense schedule is quite conservative.

Before seeking relief under Chapter 7 of the Bankruptcy Code the Debtors attempted to work out their financial problems with their creditors through personal contact and through consumer credit counseling. The consumer credit counseling service advised them that their income was insufficient to provide a meaningful repayment plan and suggested that Chapter 7 was their only recourse.

From the law that has thus far developed, the following are the criteria which this court uses to assess the facts of a particular case in determining whether substantial abuse exists sufficient to mandate dismissal under section 707(b).

1. Whether the debtors have a likelihood of sufficient future income to fund a Chapter 13 plan which would pay a substantial portion of the unsecured claims;

2. Whether the debtors' petition was filed as a consequence of illness, disability, unemployment or some other calamity;

3. Whether the schedules suggest the debtors incurred cash advances and consumer purchases in an excess of their ability to repay them.

4. Whether the debtors' proposed family budget is excessive or extravagant;

5. Whether the debtors' statement of income and expenses is misrepresentative of their true financial condition.

*In re Kress,* 57 B.R. 874 (Bankr.N.D.1985); *In re Grant,* 51 B.R. 385 (Bankr.N.D.Ohio 1985); *In re White,* 49 B.R. 869 (Bankr.W. D.N.C.1985); *In re Bryant,* 47 B.R. 21 (Bankr.W.D.N.C.1984). The most important of these criteria is the Debtors' ability to make repayment.

First of all and as before noted, the court believes that the Debtors' schedule of monthly expenses as set out in their existing schedule is reasonable. However, in view of their affidavit, it is probably not truly reflective of the long term. If Mrs. Renner's multiple sclerosis worsens to a point where home care is necessary or even institutionalization, then the non-reimbursed expenses associated with this disease will be far in excess of the $100.00 now being spent per month on medical expenses. Although the Debtors did not suggest what their future medical expenses might be, this court is satisfied they will be substantial.

The Debtors' financial situation appears to be the result not of irresponsible consumer spending, but rather a result of unfortunate health problems. Although there is a monthly budget excess existing which could be presently used to retire substantially all of their unsecured debt in a short period of time, this court does not believe their prospects for lasting income stability are particularly good nor does it believe that repayment would be prudent in view of the future. As noted by one writer, "the smaller the amount of projected disposable income, the more likely it is that the income as earned will in fact be nondisposable and necessary for support due to inflation, emergencies, or miscalculations on the part of the court." Breitowitz, *New Developments in Consumer Bankruptcy: Chapter 7 Dismissal on the Basis of Substantial Abuse,* 60 Am.Bank.L.J. 33, 37 (1986). This court believes that what now appears as disposable discretionary income will quite soon turn out to be critically necessary. From their schedules it appears that the Debtors presently have no savings of any kind. This court believes it would be prudent for them to save what they can now as a cushion against the future which may bring with it considerable unanticipated expenses not the least of which will be unreimbursed medical expenses.

Chapter 7 relief is available to those persons whose pleadings in the form of the petition, schedules, statement of affairs, statement of income and expenses and other relevant information reflect a need for the relief being sought because the Debtors are now suffering or will suffer in the near future from meaningful economic hardship. *In re Edwards,* 50 B.R. 933 (Bankr.S.D.N.Y.1985). Viewing the Debtors' circumstances as a whole, the court concludes that granting these petitioners relief under Chapter 7 would not be a substantial abuse of the Bankruptcy Code. Accordingly, IT IS ORDERED that the petitioners, Harold A. Renner and Karen M. Renner, be granted relief pursuant to the provisions of Chapter 7.