**In the Matter of Budd Milton STRONG, III, Debtor.**

**Bankruptcy No. 87–11161.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

Feb. 23, 1988.

Alan K. Hofer, Fort Wayne, Ind., for debtor.

Mark A. Warsco, Fort Wayne, Ind., trustee.

## ORDER

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court on its own motion, pursuant to 11 U.S.C. § 707(b), which required debtor to appear and show cause why this case should not be dismissed as a substantial abuse of the provisions of Chapter 7. A hearing was held on December 4, 1987, with the Trustee present by Timothy Junk. Debtor was present in person and by his attorney, Alan K. Hofer. At the hearing debtor requested and was given ten days to submit additional evidence and, on December 10, 1987, filed an affidavit in response. The court having taken this matter under advisement, now finds that the scheduled debts are primarily consumer debts and granting debtor relief would constitute a substantial abuse of the provisions of Chapter 7. Accordingly, this case shall be dismissed.

## I

The essential facts of this case are as follows. Debtor filed a voluntary petition for relief under Chapter 7 on August 31, 1987. On schedule A–3, debtor listed six unsecured claims totalling $9,745.00. Two other unsecured claims, arising out of an auto accident, were also scheduled in an unknown amount. Debtor's schedule of income and expenses disclosed his net monthly income as $1,170.00 and that of his non-petitioning spouse in the sum of $1,800.00. The itemization of monthly expenses included the total amount both he and his wife spend for rent, utilities, food, clothing, laundry and payments under a real estate contract. These expenses totalled $1,436.50.

Upon reviewing the bankruptcy petition, schedules, and statement of income and

expenses, the court noted that a substantial amount of excess income was apparently available to debtor. Accordingly, on November 12, 1987, the court ordered the debtor to appear to show cause why the case should not be dismissed, pursuant to the substantial abuse provisions of 11 U.S.C. § 707(b). At a hearing on December 4, 1987, counsel indicated that, although the schedules reflected the incomes of both debtor and his wife, debtor is solely liable for each of the scheduled debts. Debtor also asked for the opportunity to submit additional information for the court's consideration. On December 10, 1987, debtor did this by filing an affidavit which clarifies certain monthly expenses and modifies the amounts spent in selected categories. This affidavit also places amounts on the two claims arising out of the auto accident, thus, bringing the total unsecured claims to $11,247.30.

Based upon debtor's affidavit, it appears that he and his wife each pay their own individual debts. Household expenses are shared equally. Accordingly, the accompanying itemization of income and expenses allocates the various expenses between them. Debtor's expenses, including his contribution to the shared obligations, are placed at $1,130.50.[1] His wife's expenses are $775.00 monthly. To meet these monthly obligations, debtor's take home pay is placed at $1,144.00, slightly less than originally disclosed. His wife's net monthly income is $1,800.00.

## II

The interpretation and application of 11 U.S.C. § 707(b) are concerns this court has not previously addressed. If we focus only on debtor's income and his share of the expenses, assuming both were found reasonable and accurate, the substantial abuse inquiry would end. Debtor's income would exceed his expenses by $13.50, leaving only a negligible amount of disposable income available for payment of his other debts.

---

1. This total includes the $200.00 per month payment on account of a land contract which appears to be debtor's only secured debt.

If, however, we also consider his wife's monthly income and her expenses, the result is a combined income of $2,944.00 against total expenses of $1,905.50. This translates into excess monthly income of $1,038.50, giving debtor the ability to repay his unsecured debt of $11,247.30.

This case presents the issue of whether granting relief to this debtor would create a substantial abuse of the provisions of Chapter 7, thus, requiring dismissal pursuant to 11 U.S.C. § 707(b).[2] To fully and properly resolve this issue, however, another important question must be answered first. That question is whether the court should consider the income of a non-debtor spouse when making its inquiry and determination.

### III

This court believes that it must consider the income of both debtor and a non-petitioning spouse during the course of a § 707(b) substantial abuse inquiry. Bankruptcy courts in other jurisdictions have done so, without explanation, in making their own inquiries as to whether substantial abuse exists. An example of this tendency is found in the case of *In re Bryant*, 47 B.R. 21 (Bankr.W.D.N.C.1984). There debtor filed a Chapter 7 petition individually and listed monthly income for both himself and his non-debtor spouse totaling $3,420.00. *Bryant*, 47 B.R. at 24. In holding that a substantial abuse of Chapter 7 was present, the court considered the total family income and expenses as a matter of course. *Bryant*, 47 B.R. at 24–26.

The importance accorded the income and expenses of a non-petitioning spouse in substantial abuse cases should be similar to the significance given this same factor in considering Chapter 13 plan confirmations and the undue hardship discharge of student loans. In Chapter 13 cases where a married debtor files a single petition, courts commonly consider the debtor's income from all sources, including a non-debtor spouse, when assessing compliance

with the plan confirmation requirements of 11 U.S.C. § 1325. *In re Sellers*, 33 B.R. 854, 857 (Bankr.D.Col.1983). Indeed, an accurate analysis of Chapter 13's disposable income test (11 U.S.C. § 1325(b)) is impossible unless the income of a non-debtor spouse is included in the budget. *Matter of Saunders*, 60 B.R. 187 (Bankr.N.D.Ohio 1986). Similarly, various courts have included the non-filing spouse's income when examining whether a debtor's student loan should be discharged, due to undue hardship. *In re Bagley*, 4 B.R. 248, 249 (Bankr.D.Az.1980). *In re Lezer*, 21 B.R. 783, 789 (Bankr.N.D.N.Y.1982).

■ In this court's estimation, the circumstances surrounding a substantial abuse inquiry are analogous to those present in Chapter 13 plan confirmation and undue hardship situations. All three necessitate a determination of how much disposable income, after subtracting reasonable and necessary expenses, will be available to a given debtor. There is no justification for ignoring the impact of a non-petitioning spouse's income on a debtor's financial situation. *In re Kern*, 40 B.R. 26 (Bankr.S.D.N.Y.1984). Accordingly, we conclude that the income of a non-debtor spouse must be taken into account in order to properly determine whether a case constitutes a substantial abuse of the provisions of Chapter 7.

### IV

The foregoing resolution simplifies the task of deciding whether substantial abuse exists in the present case. In relevant part, 11 U.S.C. § 707(b) provides:

(b) After notice and hearing, the court, on its own motion or on a motion by the U.S. Trustee, ... may dismiss a case filed by an individual debtor under this Chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this Chapter. There shall be presumption

**2.** There is no dispute, and debtor's counsel does not suggest otherwise, that the scheduled debts

are primarily consumer debts.

in favor of granting the relief requested by the debtor.

This subsection was added to Section 707 by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA). The addition of this provision was largely due to Congress's concerns that Chapter 7 relief was increasingly being sought by debtors with the ability to repay a substantial portion of their debts. *In re Grant,* 51 B.R. 385, 389–392 (Bankr.N.D.Ohio 1985). *See* 130 Cong.Rec. H1810–12 (daily ed. March 21, 1984). Thus, it was designed to provide the bankruptcy court with the means to deny Chapter 7 relief to debtors unnecessarily discharging their consumer debts, while still guaranteeing a fresh start to those sincerely experiencing economic hardship. *See generally,* 130 Cong.Rec. at 1810–12.

Whether the legislature effectively accomplished this noble purpose has been open to much debate. The vagueness of the statute and the sparse legislative history accompanying it have given rise to numerous questions concerning, *inter alia;* the proper procedure to be used to determine whether substantial abuse exists, the effect of the presumption in favor of debtor, and the concept of substantial abuse. Fortunately, however, many courts have already addressed these questions at length. As a result, certain guiding principles have emerged, which will enable us to expeditiously answer the questions impacting on these issues.

In the instant case, the procedure employed by the court was to notify debtor of the need to appear and show cause why the case should not be dismissed for substantial abuse. Debtor was properly notified and a hearing was held. At the hearing, the court received debtor's explanation and the debtor was also given the opportunity to submit any additional evidence he felt the court should consider. While this exact procedure is not used in all jurisdictions, the overwhelming majority of courts employ a methodology whereby a debtor is ordered to appear and a hearing is conducted. *In re Struggs,* 71 B.R. 96, 97 (Bankr.E.D.Mich.1987); *Central National Bank of Woodway–Hewitt v. Spark,* 61 B.R. 285, 287 (Bankr.W.D.Tex.1986); *Bryant,* 47 B.R. at 23. A common variation on this format is to allow a debtor to elect to submit a written response to the court's order, in lieu of appearing at the hearing. *In re Renner,* 70 B.R. 27 (Bankr.D.N.D. 1987); *In re Edwards,* 50 B.R. 933, 941 (Bankr.S.D.N.Y.1985).

■ In implementing the procedural aspects of § 707(b) it is not the precise mechanics employed, but rather their purpose, which is most important. Debtor needs to be apprised of the court's concerns and given an opportunity to allay those fears. Notice of the hearing accomplishes the first goal—the hearing the second. At the hearing, the court will entertain any explanation counsel or the debtor may offer. If requested or needed, any additional information the debtor may want the court to consider can be submitted, by affidavit or testimony, at a later date. This type of procedure will insure that the court receives enough information about the debtor and his circumstances so that it can make a fully informed decision and, yet, do so in a way which will not delay the progress of the case or unduly burden the debtor. Accordingly, this court will use a similar procedure in future cases which appear to present the possibility that substantial abuse may be present.

■ The effect of the presumption in favor of debtor in substantial abuse proceedings has been subject to different interpretations. Section 707(b) merely states that "[t]here shall be a presumption in favor of granting the relief requested by the debtor." 11 U.S.C. § 707(b). At one extreme, Judge Cristol in *In re Love* found the presumption to be so strong that he denied his own motion to dismiss without hearing any evidence. 61 B.R. 558 (Bankr. S.D.Fla.1986). The better assessment, however, is not to treat the presumption as conclusive but as one which "may be rebutted by the facts themselves." *In re Kress,* 57 B.R. 874, 878 (Bankr.D.N.D.1985). Consequently, the court need only "view the facts of a given case in light of a presump-

tion ... that [debtor] is entitled to Chapter 7 relief." *Id.*

■ The principal issue of whether granting relief to this debtor would create a substantial abuse of Chapter 7 may now be analyzed with one eye cast upon the foregoing presumption. The single most important indicator of substantial abuse is the presence of enough disposable income to realistically enable debtor to repay a significant portion of his debts, through a Chapter 13 plan. *Renner*, 70 B.R. at 29; *Struggs*, 71 B.R. at 97; *In re Walton*, 69 B.R. 150, 154 (Bankr.E.D.Mo.1986); *In re Hudson*, 56 B.R. 415, 419 (Bankr.N.D.Ohio 1985). Indeed, some courts attach such great significance to this factor that it becomes the only one considered. *Struggs*, 71 B.R. at 97. *See In re Bell*, 56 B.R. 637, 641 (Bankr.E.D.Mich.1986) (primary, if not exclusive factor, is whether enough income exists to repay meaningful part of debts).

■ This court will stop short, however, of adopting the position that the amount of excess or disposable income is the only determining factor. Instead, we will adhere to the approach used in *Kress, Walton* and their progeny, and employ an analysis that places greatest emphasis on debtors' ability to repay a substantial portion of their debts, but retains the flexibility to take other factors into account, where appropriate. These factors may include, but are not limited to, the following:

(1) Was the bankruptcy petition filed due to sudden illness, calamity, disability, or unemployment?

(2) Did debtor incur cash advances and make consumer purchases far in excess of the ability to repay?

(3) Is debtor's proposed family budget excessive or unreasonable?

(4) Do debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition?

(5) Was the petition filed in good faith?

*See generally Kress*, 57 B.R. at 877–78; *Walton*, 69 B.R. at 154; *Grant*, 51 B.R. at 392–93. The foregoing guidelines will lead us through both the present and any future substantial abuse inquiries this court may undertake.

■ In the instant case, the presumption in favor of debtor is overcome by the overwhelming importance of just one factor—debtor's substantial disposable income. The plain and simple truth of the matter is that debtor's monthly family income is $2,944.00 and their stated monthly expenses are $1,905.50. Without having to examine the propriety or reasonableness of any of the expenses, we feel that the substantial amount of disposable income, in and of itself, indicates that debtor could repay a significant portion of his unsecured debts, without undue hardship.

If a debtor has the ability to repay all or a substantial portion of his debts within a reasonable time, while at the same time maintaining a reasonable standard of living, then he cannot be so financially destitute that his immediate welfare is in question. In the absence of such jeopardy, it is morally and legally unconscionable that a person should be able to extinguish his obligations without first making a reasonable effort to fulfill them. Since the availability of Chapter 7 relief presupposes that a debtor has made a reasonable effort to pay his debts, it would be a substantial abuse of that Chapter to allow a debtor to discharge those debts without first making a legitimate effort at repayment. *Hudson*, 56 B.R. at 419.

Debtor's affidavit reveals surplus income of $1,038.50. He has unsecured debts in the sum of $11,247.30. Debtor could, thus, easily pay his unsecured creditors in full, within the three years contemplated by Chapter 13. Accordingly, to grant relief to debtor in this case would constitute a substantial abuse of the provisions and spirit of Chapter 7. Pursuant to 11 U.S.C. § 707(b), this case must be dismissed.

IT IS THEREFORE ORDERED that this case be and hereby is dismissed.