**In the Matter of Ocie Ladell and Beatrice HOPE, SSN:(s) 416–02–6052, 419–21–3281, Debtors.**

**Bankruptcy No. 94–41999.**

United States Bankruptcy Court,
N.D. Alabama,
Eastern Division.

June 29, 1995.

Robert Adams of Najjar Denaburg, Birmingham, AL, for debtors.

Wilber Silberman and Jim Mendelsohn of Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for Unsecured Creditors' Committee.

Matthew Martin of Jones, Day, Reavis & Pogue, for The CIT Group/Business Credit, Inc.

Gregory Hawley and Robert Tapscott of Maynard, Cooper & Gale, Birmingham, AL, for Frontenac Companies.

Gregory Cook of Balch & Bingham, Birmingham, AL, for Bradford Capital.

Andrew W. Bolt of Bolt, Isom, Jackson & Bailey, Anniston, AL, for Willis M. Chalk.

Sarah Jackson of Lightfoot, Franklin, White & Lucas, Birmingham, AL, for A.W. Marler.

Olin Brooks, for bankruptcy administrator.

## ORDER ON MOTION TO RECONSIDER

JAMES S. SLEDGE, Bankruptcy Judge.

On May 17, 1995, the Court held a hearing on American General Finance, Inc.'s ("Creditor") motion to reconsider the order confirming the debtors' plan of reorganization entered on May 2, 1995. Appearing before the Court were the debtors' attorney, the movant's attorney, and the standing trustee. At the hearing, the Court determined that the motion was to be treated as a 9024 motion to alter or amend. Upon consideration of the motion, the statements of the respective parties, and independent research, the Court finds the facts to be as follows:

1) On or about February 11, 1994, the debtors, Ocie L. Hope and Beatrice Hope, entered into a retail installment contract and security agreement with the Creditor relating to their purchase of a 1989 Ford Mustang GT automobile. As consideration for the note, the creditor loaned the sum of $9018.72 payable with interest in 36 monthly installments of $349.80 per month beginning March 11, 1994. The seller of the automobile was Timothy Lavon Malone who, on the same date, executed an assignment of title to said automobile to Ocie L. Hope.

2) The debtor, Ocie L. Hope, requested that the Creditor permit application for title to be made in the name of "Hope, Ocie L. or Beatrice", notwithstanding the assignment of title specifically transferring the automobile to Ocie L. Hope alone. The Creditor agreed to assist Mr. Hope with his request and submitted an application for certificate of title with Mr. Hope's signature to the State of Alabama Department of Revenue. The application requested the state to make the Creditor a first lienholder.

3) On April 18, 1994, the State of Alabama Department of Revenue returned the application to the Creditor asking for a correction on the assignment of ownership. A line was drawn through the error and the corrected application was forwarded to the Department of Revenue. However, on May 5, 1994, the Department of Revenue returned the application again with a letter stating that Alabama title could not be issued without the signature of both applicants. The letter stated, "Both owners' signatures are required on the application whenever one name only is shown as purchaser in the title assignment."

4) Upon receipt of the May 5 letter from the Department of Revenue, the Creditor immediately contacted the debtors to request their assistance in completing the application with the additional signature of the debtor Beatrice Hope so that the Creditor could perfect its interest in the debtor's automobile. The debtors promised that Beatrice Hope would go to the Creditor's office and sign the application, but she never did. The Creditor made numerous other attempts to get the debtors to complete the necessary application, but they never complied. The amended application was never signed and a new title showing the Creditor as lienholder was never issued. Meanwhile, the debtors began to fall behind on their payments to the Creditor and on September 28, 1994 filed for protection under chapter 13 of Title 11 of the United States Code.

5) In the debtors' original schedules, Creditor was listed as a creditor holding a secured claim in the amount of $5,000.00. The original plan proposed to pay this claim in full over 60 months plus 7% interest.

6) On October 12, 1994, the Creditor filed a proof of claim asserting a secured claim in the amount of $8,497.05. This proof of claim had the NADA valuation and the promissory note attached in its support.

7) On March 13, 1995, the trustee filed an objection and motion for valuation of *inter alia* the claim held by Creditor. The grounds for the trustee objection was that the claim was not entitled to secured status.

8) On March 24, 1995, the Creditor filed an objection to the trustee's motion and an objection to the confirmation of the debtors' chapter 13 plan.

9) On April 12, 1995, the Court held a hearing on Confirmation of the debtors' plan, the trustee's objection to the proof of claim filed by the Creditor, and the Creditor's ob-

jection to discharge. At the hearing, the Court determined that the trustee's objection was due to be sustained, the Creditor's motion was due to overruled, and the debtors' plan was due to be confirmed.

10) On April 21, 1995, the Creditor filed the motion which is the subject of this opinion.

## DISCUSSION OF LAW

■ The Creditor's motion is founded in the belief that the Court committed error in refusing to consider the debtors' pre-filing conduct in determining whether the debtors' plan was filed in good faith, 11 U.S.C. § 1325(a)(3). Apparently, this belief is based upon statements of the Court during the hearing on the Creditor's Objection to confirmation, specifically, "the Court cannot find without any indication of Congress that a plan proposes to pay claims as they exist is not filed in good faith, and the Court cannot find any statutory responsibility of a debtor to file a plan that satisfies prepetition representations to create a lien by a debtor." (transcript at 37–38).

The creditor cites a number of authorities for his proposition that a court "must consider the totality of circumstances, including pre-petition conduct, in determining whether the debtors have "acted equitably," and, therefore, whether the chapter 13 is proposed in good faith." (Creditor's motion at 1). However, the cited authorities are not persuasive.

*In re Tucker*, 989 F.2d 328 (9th Cir.1993), the first case cited by the Creditor, is a ninth circuit case that holds a bankruptcy court "must consider the totality of circumstances, including prepetition conduct, in deciding whether the debtor has acted equitably." *Id.* at 330. The debtors' conduct in this case was especially egregious. Prior to the filing, the creditor in the case had obtained a $50,000.00 judgment against the debtors. The attorney for the creditor found out that the debtors had cash on hand at their house, and sent a sheriff to the debtors' house to execute on the judgment. The sheriff asked if the Mr. Tucker had $7,000.00 in cash on hand and he told her that he did not. When asked why he didn't tell the sheriff that his wife had the $7,000.00, he replied, "She didn't ask if my wife had $7,000.00." *Id.* at 329. Within a few weeks of this episode the debtors paid $6,500 on a loan that was fully secured by their residence and then filed a chapter 13. *Id.* The Ninth Circuit reversed and remanded because the "orders contain no factual findings and fail to address the Tuckers' asserted bad faith refusal to comply with the deputy sheriff's demand." *Id.* at 330.

Another authority cited by the Creditor is *Matter of Whipple*, 138 B.R. 137 (Bankr. S.D.Ga.1991). In *Whipple*, the objection to the confirmation of the debtors' plan was filed by judgment creditors who obtained their judgment as a result of an automobile collision. At the time of the accident, the debtor's had no liability insurance as required by state law.[1] The creditors had obtained a default judgment against the debtors in the state court action, but damages were to be subject to further proof and were unliquidated at the time of the confirmation hearing.[2] The plan proposed by the debtor's would have paid all claims in full over 5 years, except for the unliquidated claim of the judgment creditors who were to receive nothing. The judgment creditors alleged that since their claim would be non-dischargeable in a chapter 7 case, the debtors' attempt to avoid such a debt in chapter 13 is bad faith. *Id.* at 139. The court found that the debt would be nondischargeable up to the minimum liability insurance required by law. The court proceeded to address the issue of bad faith. The court held that the nondischargeability of a debt under § 523(a)(6) "is a factor bearing on the issue of good faith." *Id.* at 142. The court also noted that the fact that the "only significant debt, besides the remaining secured debt to the Trust Company Bank, is the debt owed to the innocent tort victims," *Id.* at 143, which was to receive no payments under the plan. The court found that "under the totality of the circumstances" the plan had not been proposed in good faith.

---

1. The Court found that the debtors' failure to have liability insurance was a "willful" decision.

2. Mrs. Tutt, one of the judgment creditors, had medical expenses exceeding $27,000.00.

Another case relied upon by the movant is the case of *In re Kern*, 40 B.R. 26 (Bankr. S.D.N.Y.1984). Manufacturers Hanover, which held 80% of the unsecured debt in the case, filed an objection to the debtor's proposed plan of reorganization. Manufacturers' credit card debt was incurred for the purpose of funding the debtor's business. The credit obtained from Manufacturers was obtained by fraud. The debtor listed non-existent assets when applying for extensions of credit.[3] The original plan showed the debtor's income to be $433.00 a month, plus his wife's income of $975.00 a month for a total of $1,408.00. The plan proposed to pay $121/mo. for 36 months, resulting in a 15% plan. The debtor later amended his plan to reflect a new job which substantially increased his income, however, he also withdrew his wife's income at the same time, and made no change to the proposed payment of creditors. When asked why he removed his wife's income from the plan, the debtor explained that "his wife is "old fashioned," believes that a husband is to be the family's sole provider and refuses to pay even a portion of the rent on their apartment even though the lease is solely in her name." *Id.* at 27. The debtor further testified that "were he to ask his wife to make a monetary contribution either to everyday household expenses, or to the plan, that she would seek a divorce." *Id.* The court sustained Manufacturers' objection holding, "Mr. Kerns plan as proposed on the basis of his assertion that Mrs. Kern will leave him if asked to contribute to her own support is simply untenable,

..., It [the Code] does not require a set percentage. But it does require the debtor's best efforts." *Id.* at 29.

What the above cases illustrate is that the Bankruptcy Courts across the nation have the good sense not to confirm plans that should not be confirmed. These cases do not support the Creditor's assertion that the confirmation of the above-styled case should be set aside. The above cases had debtors who committed outrageous conduct while seeking the protection of Title 11; the debtors in this case committed no such conduct. The debtors in this case originally scheduled the Creditor as secured, they were not trying to escape liability. It was not until the trustee questioned the Creditor's claim, that the debtors sought to treat the claim as unsecured. Also, it is not as if the debtor's are proposing to pay Creditor nothing, the plan proposes to pay unsecured creditors, including Creditor, 51% of their claims. Creditor failed to prove any intentional fraud by the debtors in procuring the debt or in preventing the Creditor from perfecting its interest in the car. Under the factors as elaborated by the Eleventh Circuit Court of Appeals in *In re Kitchens*, 702 F.2d 885 (11th Cir.1983), the debtors plan was proposed in good faith.[4] In fact, the debtors' plan may not need to satisfy the factors presented in *Kitchens*. In *McCormick v. Bank One Leasing Corp. (In re McCormick)*, 49 F.3d 1524 (11th Cir.1995), the Eleventh Circuit stated that "[w]here the plan is proposed with the legitimate purpose

3. Such as a Mercedes Benz, a lien free house, stocks, bonds, and money market accounts.

4. The Eleventh Circuit adopted the following test for determining whether a chapter 13 plan has been proposed in good faith as required by 11 U.S.C. § 1325(a)(3):
   (1) the amount of the debtor's income from all sources;
   (2) the living expenses of the debtor and his dependents;
   (3) the amount of attorney's fees;
   (4) the probable or expected duration of the debtor's Chapter 13 plan;
   (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;
   (6) the debtor's degree of effort;
   (7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;

   (8) special circumstances such as inordinate medical expense;
   (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;
   (10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;
   (11) the burden which the plan's administration would place on the trustee;
   (12) the type of debt to be discharged and whether such debt would be nondischargeable under chapter 7;
   (13) the accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court.
   *In re Kitchens*, 702 F.2d 885, 888–889 (11th Cir.1983).

to reorganize and has a reasonable hope of success, the good faith requirements of section 1129(a)(3) are satisfied." *Id.* at 1526. Although this standard is elaborated in a chapter 11 case, the good faith language of § 1129(a)(3) is identical to the good faith language of § 1325(a)(3).

Therefore, for good cause found, it is OR-DERED by the Court that the motion for reconsideration is denied and that a copy of this order shall be sent through the United States mails to each of the following (which shall be sufficient service and notice hereof): the debtors, the debtors' attorney, the Creditor, the Creditor's attorney, and the trustee.