**In the Matter of Stephen ANTAL, Debtor.**

**Bankruptcy No. 86–02822–3.**

United States Bankruptcy Court, W.D. Missouri, W.D.

Jan. 6, 1987.

---

* City Bank & Trust Company has not attempted to obtain a stay of the judgment.

---

Christopher W. Hodge, Knob Knoster, Mo., for debtor.

MEMORANDUM OF FINDINGS OF FACTS AND CONCLUSIONS OF LAW SUPPORTING ORDER DISMISSING CHAPTER 7 PROCEEDINGS AS A "SUBSTANTIAL ABUSE" OF THE PROVISIONS OF THE BANKRUPTCY CODE

DENNIS J. STEWART, Chief Judge.

In his schedules of monthly income and expenses which he filed with this court in conjunction with his petition for voluntary relief under chapter 7 of the Bankruptcy Code, the debtor stated that his monthly take-home income was $1,200 per month. Because that sum was $400 in excess of the then-existing monthly net-income guideline for single persons (and $200 in excess of the guideline which has since been employed by the court),[1] this court issued its

---

1. Since the issuance of the show cause order in this case, the court has raised its *guideline* for

order to show cause why the within chapter 7 case should not be dismissed as a "substantial abuse" of the provisions of chapter 7 within the meaning of § 707(b) of the Bankruptcy Code. For, if the excess of the amount of the guideline were applied to the scheduled unsecured indebtedness of some $8,000 [2], it could be almost wholly paid over the 60 months allocable to a chapter 13 plan.[3]

In response to the show cause order, it was the debtor's contention that he had actual monthly expenses which are reasonable and necessary, which exceeded the court's guidelines, and which actually consumed all of his take-home pay. But it was shown by the schedule of expenditures initially filed by the debtor that some $250 of these monthly expenditures were to be devoted to repaying a $6,000 indebtedness allegedly owed to the debtor's parents at the rate of $100 per month and other prepetition creditors which the debtor proposed to prefer by reaffirming his indebtednesses to them.[4] It was the debtor's position, further, that he had inadvertently failed to schedule debts which would bring the total of unsecured debts to a sum approaching or exceeding approximately $18,000.[5]

On the basis of the contents of the court file as above described, the debtor appeared before the court on December 31, 1986, in response to the court's order setting a hearing on the § 707(b) issue. At that time, the debtor also appeared by counsel, W. Christoper Hodge, Esquire. The debtor then testified that he was financially responsible for a child of a former marriage; that he was currently single, but was residing with a woman who had a child who was being supported by A.D.C.; that he in fact still proposed to repay his parents at the rate of $100 per month and the other preferred creditors an additional $150 per month rather than pay his unsecured creditors equally; and that, otherwise, his monthly expenditures were correctly characterized by the schedule of them filed in conjunction with his petition for relief in chapter 7.[6]

Under such circumstances, when the debtor admits that he has a sufficient surplus of monthly income to pay some $250 per month to his creditors, but refuses to pay that amount equally among his unsecured creditors, and instead insists that he be permitted to prefer his relatives and certain other creditors for no discernible reason,[7] this court believes that the paramount goal of bankruptcy—that of equality of treatment of creditors [8]—is offended. And, when the offense thus given is deliberate, taking, as it did in this case, the form of a decisive and calculated declination of the court's invitation to commence the chapter 13 proceedings when the debtor is

single debtors from $800 monthly expenses to $1,000.

2. The debtor scheduled "unsecured claims without priority" in the sum of $8,900.00.

3. The excess of $200, multiplied by the 60 months' maximum duration of a chapter 13 plan, yields $12,000.

4. In addition to the $100 proposed to be paid monthly to the debtor's parents, the debtor proposes $85 per month to VISA. But payment of $185 per month into the 60–month chapter 13 plan which is possible, see note 3, *supra*, would result in a total payment of $11,000, a sufficient amount to pay *all* unsecured creditors, *not just the favored ones.*

5. The new debts sought to be scheduled belatedly are: (1) an indebtedness to *Parrott Concrete Foundation Company* in the sum of $3,915.00 (*as to which the debtor admittedly has a full available defense*); (2) a deficiency of $15,000 remaining after liquidation of the residence of the debtor and his former spouse; (3) debts to Citizens Bank of Warrensburg and former wife totalling $5,850.00.

6. Debtor contends in the affidavit that he has expenses which exceed his take-home pay by the sum of $147 per month. But the debtor still proposes to pay $185 per month to his favored creditors, a proposal which makes this contention incredible. Even if only $100 per month is in excess of expenditures, payment of it into a chapter 13 plan would result in substantial payment to all creditors.

7. See notes 4 and 6, *supra.*

8. The "prime bankruptcy policy" is that of "equality of distribution among creditors of the debtor." H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787, 6138; *In re Conn,* 9 B.R. 431, 434 (Bkrtcy.N.D.Ohio 1981).

admittedly able to pay a substantial portion of his unsecured indebtedness, this court believes it to be a case of "substantial abuse" within the meaning of § 707(b). Counsel did not undertake in the hearing of December 31, 1986, to make any showing whatever of the debtor's inability to make monthly payments in the vicinity of $200 to unsecured creditors.[9] Rather, he insisted that it was within the ambit of the debtor's inalienable rights to use the bankruptcy process to prefer the creditors whom he wishes to favor at the expense of others. But if such a flouting of the equality principle is freely allowable, the bankruptcy courts may be used simply to enrich one's relatives and himself at the expense of certain creditors whom the debtor simply wishes to discriminate against. No reasonable mind could be expected to stand by and permit such a wholly inequitable result.

It seems to be the general underlying argument of counsel for the debtor that a bankruptcy court can never issue a § 707(b) dismissal on the basis that a debtor has the ability to pay all or part of his debts. He cites isolated and intermediate (and therefore nongoverning) legislative history to this effect.[10] But, if it is not a primary purpose of § 707(b) to promote dismissal of chapter 7 cases in which debtors have the ability to pay their debts, it is difficult to imagine what its primary purpose can be. Why, otherwise, would the Congress, in the same set of legislative enactments which contained § 707(b), have legislated the requirement that debtors file a monthly income and expenditure statement? And see *In re Kress*, 57 B.R. 874,

877 (Bkrtcy.D.N.D.1985), to the following effect:

"[I]t [is] both unfair to creditors and burdensome to the public at large to allow debtors to seek chapter 7 relief giving little or nothing to creditors where a substantial portion of those debts could be paid out of disposable income. Legislative history suggests that section 707(b) was primarily directed towards this kind of abuse."

These principles, it appears to this court, compel the dismissal of the case at bar as a "substantial abuse" within the meaning of § 707(b). Any other result would simply stultify the bankruptcy law and defeat its purpose.[11]

Nor is it material that, as the debtor's counsel contended in the course of the hearing of December 31, 1986, the debtor may have substantial unsecured debts in addition to those which he originally scheduled. For, even if it is assumed that the debtor absolutely owes all that he contends he owes, his admissions before the court on December 31, 1986, show that he has the ability to pay more than two-thirds of that total by means of a 60–month chapter 13 plan.[12] Further, he states that he has defenses to a substantial portion of the newly-asserted indebtedness.[13] And a chapter 13 plan is not always required to be a 100% plan.

Accordingly, for the foregoing reasons, an order will be entered dismissing these chapter 7 proceedings under the provisions of § 707(b), *supra.*

---

9. The only showing was that already purporting to have been made in the debtor's response to the court's show cause order. See note 6, *supra.*

10. Debtor's counsel cites Senate Report No. 95-989, to the effect that "[t]he section does not contemplate ... that the ability of the debtor to repay his debts in whole or part constitutes adequate cause for dismissal." But this legislative history derives from a refusal *prior to* the Bankruptcy Amendments and Federal Judgeship Act to make ability to repay debts a criterion for dismissal under *a separate subsection* of § 707. See 4 Collier on Bankruptcy para 707.-04, p. 707–11 (15th ed. 1986), to the following

effect: "The provision [§ 707(b)] was added to chapter 7 in response to concerns that some debtors who could pay their creditors might resort to chapter 7 to avoid their obligations. Congress had earlier rejected the criterion that a debtor's ability to repay might be 'cause' for dismissal under *section 707(a) ...*" (Emphasis added).

11. See notes 8 and 10, *supra.*

12. Even if the debt is $18,000, debtor is able to pay almost $12,000. See notes 4, 5 and 6, *supra.*

13. See note 5, *supra.*