**In re Charles Ellsworth KROHN, Debtor.**

**Bankruptcy No. 586–1754.**

United States Bankruptcy Court, N.D. Ohio.

Nov. 3, 1987.

Bruce R. Freedman, Akron, Ohio, for debtor.

Richard Wilson, Kent, Ohio, Trustee.

## FINDING AS TO COURT'S MOTION UNDER SECTION 707(b)

H.F. WHITE, Bankruptcy Judge.

The debtor filed for relief pursuant to chapter 7 of the Bankruptcy Code on December 12, 1986. A hearing was scheduled on the reaffirmation agreement, in the amount of $19,701.87, between the debtor and Society National Bank and was subsequently adjourned to June 23, 1987.

As a result of the reaffirmation hearing, the court on May 19, 1987 reviewed the file and on June 1, 1987 issued an order, on its own motion, requiring the debtor to appear before the court pursuant to 11 U.S.C. § 707(b). The debtor appeared on July 9, 1987 with the documents that were requested and the court reviewed the documents at the hearing. Also appearing was the debtor's counsel, Bruce Freedman. Although all creditors were notified of the hearing, none appeared.

The court hereby makes the following Finding of Fact and Law.

## FINDING OF FACT

1. The debtor has been employed as a financial business manager for a large industrial firm for the past two years. Pursuant to the debtor's 1040 tax returns filed with the U.S. Government, in 1985 his total earnings amounted to $56,171; in 1986 his total earnings amounted to $66,079; and his estimated projected earnings for 1987 will amount to between $75,000 to $80,000. This projected figure is based upon bonuses received by the debtor in 1987 for work performed in 1986.

2. The debtor is married and has no children. His wife did not file for relief under the Bankruptcy Code. She is not employed outside of the home.

3. The debtor filed a motion to redeem his 1983 Datsun Maxima from the trustee for $4,000. The debtor also owned a Mark VII Lincoln automobile which he valued at $12,000 and surrendered to the secured creditor, B.F. Goodrich Credit Union, which is owed approximately $13,000.

4. The debtor had a half interest in a condominium at 1078 Hampton Ridge Drive, Akron, Ohio which he valued at $85,000. The one mortgage due on the condominium was in the amount of $68,000. The debtor claimed a $5,000 homestead interest in the property and the trustee allowed the debtor to retain his half interest in the residence for the sum of $3,750, which the debtor has paid to the trustee. On July 1, 1987 the debtor and his wife sold the condominium for the sum of $98,500 which netted the debtor and his wife the sum of $19,626.49.

5. The debtor and his wife subsequently purchased a new home at 381 East Fairlawn Boulevard, Akron, Ohio valued at $156,000. The purchase of this house was financed by Society National Bank on the condition that the debtor reaffirm an unsecured debt of $19,701.86 which was incurred by the debtor on a line of credit and the use of a Mastercard.

6. The debtor indicated that as of July 9, 1987 he and his wife owed Society National Bank $125,000 on a first mortgage

and $20,000 on a home equity loan line of credit.

7. The debtor indicates on his Schedule A-3 that he owes unsecured creditors $143,074. Of this amount, thirteen debts were for Visa or Mastercard cards, eleven were for various lines of bank credit, and there were several others for unsecured loans. The debtor admits that during 1986 he borrowed cash advances from one creditor to pay the required minimum to other creditors in order to keep the accounts current. The debtor testified that he was able to do this by using his home computer which enabled him to keep records of his accounts and cash advances. He continued this type of operation until the pyramid collapsed which resulted in the filing of this bankruptcy.

8. On the debtor's 1040 U.S. tax return for 1986, Schedule A, Line 12, he deducted $22,309 total credit card charges and admits that these payments were made by juggling the cash advances from the credit cards and other lines of credit. *See* 1040, 1986 tax schedule at line 12, with attached documents.

9. The debtor did not reaffirm the debt on his 1984 Lincoln Mark VII, but subsequent to filing bankruptcy, he purchased a 1984 Thunderbird to replace the Lincoln.

10. The debtor admits that the reason for the reaffirmation of the debt with Society National Bank was based upon the bank's agreement to finance the purchase of the new, larger home in Fairlawn Heights, Akron, Ohio.

11. The debtor's budget originally submitted to the court indicates a net monthly take home pay of $4,015. On Schedule B-3 he indicates food expenses of $700 per month, clothing expenses of $150 per month, recreational expenses of $435 per month, plus religious and charitable contributions of $200 per month. Subsequently, a new budget as of July, 1987 was submitted to the court indicating a reduction for monthly food expenses to $400, a reduction for recreational expenses to $110 per month, and a reduction for charitable contributions to $110 per month; but monthly miscellaneous household expenses and maintenance expenses are increased from $95 to $200 and miscellaneous gift expenses are increased to $140 per month. The debtor is a member of the Akron City Club. The debtor's explanation for the large food bills was that his wife does not like to cook and he explained the large monthly expense for clothing in that it was necessary for his wife to have her clothes made by a seamstress.

12. The court finds that the debtor has no other assets except a retirement account with Society National Bank in the total sum of $9,456.81.

13. The debtor admits that he lost $1,000 gambling while on vacation at Nassau in March, 1986.

14. The debts scheduled by the debtor were primarily consumer debts as the debtor is an individual whose debts were for personal, family, or household purposes.

15. The debtor has medical coverage through his employer and indicates no unusual medical bills for himself or his wife.

16. Notice of the bankruptcy filing has been given to the creditors as required by law, and none of the creditors have filed an exception to the discharge of the debts as scheduled by the debtor. The time has expired for the creditors to file exceptions to the discharge of debts as provided for by 11 U.S.C. § 523.

17. The trustee indicates in his report that the sum of $7,576.19 is in the trustee's account for this estate and the administrative costs amount to $446.50, leaving a balance in the sum of $7,129.69 to be disbursed to creditors. There are fifteen claims filed which total $60,842.32.

## ISSUE

Based upon the Finding of this court and the fact that the debtor is not eligible to file a chapter 13 proceeding under the Bankruptcy Code, has there been a substantial abuse of the provisions of chapter 7 to require dismissal of the debtor's petition?

## DISCUSSION OF LAW

Section 707(b), added to the Bankruptcy Code by the "Consumer Credit Amendments" of 1984, provides that:

> After notice and a hearing, the court, on its own motion and not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b) (Supp.1986).

Congress failed to both define the term "substantial abuse" and to set forth a standard by which to measure the term "substantial abuse." This court, in *In re Grant*, 51 B.R. 385 (Bankr.N.D.Ohio 1985), analyzed the legislative history in order to determine the intent of Congress in enacting section 707(b) and also to decipher from the intent any definition or standard by which to measure the term "substantial abuse." *Id.* at 389–392; *see also In re Edwards*, 50 B.R. 933 (Bankr.S.D.N.Y. 1985).

■ The following are factors which the court considers in determining whether a petition for chapter 7 relief should be dismissed for substantial abuse of its provisions: whether the debtor has a likelihood of sufficient future income to fund a chapter 13 plan which would pay a substantial portion of the claims of the unsecured creditors; whether the debtor has exhibited any bad faith in the filing of his petition and schedules, or has engaged in "eve of bankruptcy purchases"; and whether the debtor has suffered an unforeseen calamity, or is merely using chapter 7 provisions to gain relief from past excesses. *Grant*, 51 B.R. at 393–394.

■ The case *sub judice* differs from *Grant* in that the debtor herein is ineligible for chapter 13 relief because the debtor's noncontingent, liquidated, unsecured debts exceed the statutory limit of $100,000. 11 U.S.C. § 109(e). The future income of a debtor is a factor in the feasibility for a chapter 13 repayment plan because 11 U.S.C. § 1306(a)(2) treats postpetition earnings of a chapter 13 debtor as property of the estate. In contrast, earnings from services performed by a debtor after the commencement of a case under chapter 7 are not the property of the estate and are not required to be available for repayment purposes under chapter 7. 11 U.S.C. § 541(a)(7). Even though the debtor herein has significant income, see Finding of Fact 1, and appears to be financially capable of partially repaying his consumer creditors over a period of years, the Bankruptcy Code prohibits the debtor from seeking chapter 13 relief.

The factor of whether or not the debtor has exhibited bad faith in the filing of his petition and schedules and whether or not he has engaged in "eve of bankruptcy purchases" is determined by an examination of all the evidence including the petition, schedules, the schedule of current income and current expenditures, and the testimony and documents presented by the debtor at the hearing held pursuant to the court's motion under 11 U.S.C. § 707(b). The debtor lists $143,074 in unsecured debts. Finding of Fact 7. In the schedule of current income and current expenditures as originally submitted, the debtor indicates a monthly income of $4,015 with monthly expenses of $3,950. Finding of Fact 11. Subsequent to filing for relief, the debtor and his wife sold their condominium. Finding of Fact 4 and 5. The itemization of current expenses submitted by the debtor pursuant to the court's section 707(b) motion indicates the following expenses for the period April–June, 1987: $1,065.61 for dining out, lunch and recreation; $355.06 for groceries consisting of food; $169.84 for cosmetics; $66.49 for cigars; $671.99 for clothes; $256.18 for gasoline; and $1,477.78 for mortgage payments.

There appear to be no "eve of bankruptcy purchases" but rather a consistent pattern of living on credit or beyond the debtor's means. At no point in the debtor's history, either before or after filing for chapter 7 relief, has the debtor shown a sincere resolve to repay his obligations

and/or to reduce his monthly expenses. The debtor admits to making only minimum monthly payments so as to keep the accounts current. Finding of Fact 7. As further evidence of his bad faith, the debtor seeks a discharge only of those unsecured debts held in his name alone and not a discharge of any credit cards held jointly with his wife and, as his wife did not file bankruptcy, she continues to maintain those credit cards solely in her name. The debtor treats his creditors in a callous manner and indulges in a life-style in excess of a reasonable standard of living.

The goals of bankruptcy are to provide an honest debtor with a fresh start and to provide for an equitable distribution to creditors. The debtor herein, although he has minimal assets, appears to be seeking a "head start" with no attempt to deal with creditors on an equitable basis.

Finally, there is no evidence of an unforeseen calamity, be it economic and/or medical, whereby the debtor is involuntarily forced to seek chapter 7 relief. On the contrary, the evidence indicates that the debtor is merely using the chapter 7 provisions to gain relief from past excesses. As in *Grant*, the debtor's "free-wheeling spending is likely to put the debtor in need of additional relief after several years." *Grant*, 51 B.R. at 396. Further, the debtor's schedules of unsecured debt and of current income and expenses reveal an individual who, even though aware of his financial limitations and already faced with financial difficulties, continues on his path and uses his home computer to juggle his credit card payments. *See In re Newsom*, 69 B.R. 801 (Bankr.D.N.D.1987).

The impression created by the debtor is that chapter 7 relief is his only remedy. By statute, the debtor is precluded from chapter 13 relief. It is quite possible that the debtor could file for relief and propose a plan under chapter 11. However, postpetition earnings from services performed by an individual debtor under chapter 11, as in chapter 7, are expressly not property of the estate and are not required to be available for repayment purposes for chapter 11. 11 U.S.C. § 541(a)(7). As in *In re*

*Mastroeni*, 56 B.R. 456 (Bankr.S.D.N.Y. 1985), the debtor herein has minimal assets with which to fund a chapter 11 plan. Even though the debtor could "cramdown" a minimal percentage repayment plan, the plan would still have to meet the test of good faith pursuant to 11 U.S.C. § 1129. The court in *Mastroeni*, in holding that the debtor was entitled to chapter 7 relief, states: "Indeed, a dismissal in such circumstances would be tantamount to a denial of a discharge under 11 U.S.C. § 727, without establishing any of the statutory grounds for barring such discharge." This may be true.

However, even though there is no remedy for the debtor under the Bankruptcy Code, there are at least two other non-bankruptcy procedures that are available to the debtor to obtain relief other than a "belt-tightening" of his life-style. For one, the debtor can privately negotiate with his creditors. This procedure has long been advocated by credit counseling services in lieu of bankruptcy. There is no evidence that the debtor attempted this procedure nor that his creditors would not be receptive. In fact, one creditor, Society National Bank, did make an agreement with the debtor as to the debt owed it. Of course, there was possibly some ulterior motive in this agreement. A second non-bankruptcy procedure available to the debtor in the State of Ohio is the Municipal Court Trusteeship program whereby a debtor, upon receiving a fifteen-day demand notice from a creditor, can seek relief through the Municipal Court of Akron and hold property exempt from execution, garnishment, attachment, or sale pursuant to Ohio Revised Code § 2329.66. Under Municipal Court Trusteeship the debtor needs to pay only his unexempt portion of his wages to his creditors and there is no time limit on the payment plan.

In light of the foregoing, the court concludes that granting the debtor's petition for relief would be a substantial abuse of the provisions of chapter 7, and therefore the court grants its *sua sponte* motion.

**834**

A separate order will be issued on this finding.