## In re Roland WARFIELD and Linda Warfield, Debtors.

### Bankruptcy No. 1–87–02560.

United States Bankruptcy Court,
S.D. Ohio, W.D.

Jan. 5, 1988.

Robert A. Goering, Cincinnati, Ohio, for debtors.

Norman L. Slutsky, Cincinnati, Ohio, trustee.

### DECISION and ORDER IN § 707(b) MATTER

BURTON PERLMAN, Bankruptcy Judge.

This case came to the attention of the court upon the submission to us for signature of an agreed entry which would allow debtors to assume an unexpired lease on a 1987 Chrysler New Yorker. The proposed entry led us to review the file. The statement of affairs shows that both debtors are employed and had a combined income of upwards of $50,000.00. They listed some $30,000.00 in unsecured consumer debt. The consumer debt appeared not to have produced any reported non-exempt assets. Debtors evidently had no equity in their $100,000.00 home, which they had caused to be abandoned and presumably would continue to occupy. These facts led us to suspect bad faith in the filing, for it appeared that debtors had deliberately arranged their affairs to defeat creditors through use of the bankruptcy laws. We advised counsel for debtors that this was the reason for the hearing. We therefore, pursuant to 11 U.S.C. § 707(b), set the matter for hearing as to whether the granting of relief would be a substantial abuse of the bankruptcy law.

At the hearing, both debtors testified. Roland Warfield testified that he was an accountant, and was employed as an audit

manager by a major corporation. His job requires travel by automobile, and his employer does not provide a car. Because of frequent extended automobile trips, he needs a substantial vehicle and that is the reason for the proposed assumption of the lease of the Chrysler New Yorker. The debtors surrendered a second car. Roland married the co-debtor, Linda Warfield, four years ago. There have been no children of their marriage. Linda, however, had previously been married and has two children from the former marriage.

When Roland married Linda in 1984, they bought their present house. They financed it by selling Linda's house and using the equity as a down payment. They refinanced the house in 1985 and obtained $20,000.00 which they used to pay off substantial credit card indebtedness which they had accrued at that time.

Their present bankruptcy schedules show credit card debt of about $30,000.00. Included is a bill for three suits which Roland had made at a cost of $1,600.00. He testified that he was an unusual size and could not wear clothes off the rack. Debtors spent $3,200.00 to landscape their home. They obtained $1,700.00 in cash advances on credit cards as a down payment on a van. They similarly obtained $1,200.00 in credit card advances to purchase a time-share in a condominium. Credit cards also financed some $3,500.00 which Roland contributed to his mother's support. In addition, $2,000.00 came from credit card advances to pay for a custody fight of Linda's children. The credit card burden was such that there is some $5,600.00 in service charges on them.

Roland testified that the credit cards were obtained through the mail. He testified also that he had never received any budget training, and though he is an accountant, is not trained in the management of a household.

Linda Warfield testified that she was educated through one year of business college and has been employed by the same major corporation which employs her husband. She was married for the first time when she was 23 years old, and her then husband managed the finances of the household, keeping both their earnings, except that he allowed her a minimal amount. Linda's first marriage ended in divorce in 1980. In the divorce, she was awarded $350.00 monthly support. She married Roland in 1984. He gave her free rein of the checkbook. They indulged her children. They never eat at home, but eat out every night. They have extensive medical expenses because her son is asthmatic. They have surrendered their second car and believe this will enable them to continue living in their present home.

In a prior decision, *In re Deaton*, 65 B.R. 663 (Bankr.S.D.Ohio W.D.1986), we held that the ability to fund a Chapter 13 plan in and of itself is not sufficient to establish "substantial abuse" as required in § 707(b). Something more which could amount to bad faith must be present. See also *In re Grant*, 51 B.R. 385 (Bankr.N.D.Ohio 1985). In *Grant*, the court found bad faith in the failure of the debtors to realistically and accurately list their monthly expenditures on the schedule for that purpose originally filed in the case, and their overstatement of reasonable monthly expenses on a subsequent filing of an amended schedule. In addition, he found that the conduct of debtors subsequent to filing, incurring extravagant expenses for consumer items within 180 days of the filing of the bankruptcy petition, indicated bad faith. It did not merely give the debtors in that case a fresh start, it gave them a "head start". In *In re Krohn*, 78 B.R. 829, 16 B.C.D. 883 (N.D. Ohio 1987), the same judge in dealing with the same question and again finding bad faith, said:

> There appear to be no "eve of bankruptcy purchases" but rather a consistent pattern of living on credit or beyond the debtor's means. At no point in the debtor's history, either before or after filing for Chapter 7 relief, has the debtor shown a sincere resolve to repay his obligations and/or to reduce his monthly expenses. The debtor admits to making only minimal monthly payments so as to keep the accounts current. Finding of Fact 7. As further evidence of his bad

faith, the debtor seeks a discharge only of those unsecured debts held in his name alone, and not a discharge of any credit cards held jointly with his wife and, as his wife did not file bankruptcy, she continues to maintain those credit cards solely in her name. The debtor treats his creditors in a callous manner and indulges in a life style in excess of a reasonable standard of living.

On the other hand, another court in *In re Edwards,* 50 B.R. 933 (Bankr.S.D.N.Y. 1985), after invoking § 707(b), declined to find substantial abuse and permitted a discharge to issue. The court said that "The worst that can be said of the Debtors is that they are undisciplined." (p. 940.) The court reached this conclusion because the debtors there had set up a repayment plan prior to filing bankruptcy, but found that they were unable to comply with the plan.

In the present case, at the hearing debtors presented evidence to counter the concern of the court that debtors had deliberately arranged their affairs to defeat creditors through use of the bankruptcy laws. Because this was the concern expressed to them, their purpose in their testimony was to counter this concern by showing that they had gotten into financial difficulties because they did not know how to conduct their financial affairs prudently. Thus, Roland said that, notwithstanding that he was an accountant, the notion of budgeting of the household finances was not within his competence. Linda testified that because she had been an indulged child, and had been deprived in her first marriage, her response in this marriage was to incur expenses beyond what was prudent.

While we are satisfied that debtors in the present case were not engaged in a purposeful exercise prior to filing bankruptcy to defeat creditors through use of the bankruptcy process, we cannot say that the record presented totally dispels our concerns about bad faith. The court in *Grant* and *Krohn* found bad faith where debtors made expenditures which they could not realistically expect to repay. There is something of that in the present case. Notwithstanding that debtors had accumu-

lated some $20,000.00 in debt after a year or so of marriage, which debt they handled by realizing on the equity in their home and paying off creditors, they immediately resumed the accumulation of further credit card debt, which events proved they could not pay. They could have avoided this by recognizing that their spending was out of control and reduced their expense level. It is not necessary, even where both spouses work, to eat out every night. It is not necessary, even if you believe that you are hard to fit, to have custom-made clothes. The only concession to prudence that debtors have said they intend to make is to surrender their second car. This will not suffice to bring them to a standard of living within their means. Debtors need to adopt a more reasonable overall lifestyle to do this. Even though we do not believe that the statement from the *Edwards* case, that the worst that can be said of debtors is that they are undisciplined, applies here, we are not persuaded that these debtors should be deprived of Chapter 7 relief. At the same time, we believe that their conduct, applying the standard of *Grant* and *Krohn,* where debts were incurred that it could reasonably be foreseen could not be repaid, is perilously close to bad faith.

We adopt the following as our resolution of the § 707(b) question, bearing in mind the assertion by debtors that they have not been schooled in household budgeting. In this case, the clerk's office mistakenly issued a discharge to these debtors at a time that the hearing on the § 707(b) question was pending. We have the power to revoke the discharge as improvidently granted through administrative oversight. We will refrain from revoking the discharge, and will permit the discharge to stand, provided debtors:

1. Secure counseling in household budgeting, supplying evidence to us within thirty days of the date of this order that they have done so, or are in the process of doing so;

2. Submit to the court, by the tenth day after the end of each calendar month for the six months following the date of this order, a record of their *actual*

household income and expenses. This is to be in the form of a sworn statement by debtors; and

3. Refrain from making purchases on credit or otherwise incurring voluntary indebtedness unless approved by the court, for the six-month period following the date of this order, and so certify to the court at the end of that period.

It also would not be amiss for both debtors to take a cooking course, including instruction in microwave cookery.

If debtors comply with the foregoing conditions, and if their actual budgets appear reasonable and indicative of a lifestyle within their means, we will withdraw our present § 707(b) motion.

So Ordered.