**In re Charles George ANDRUS, Debtor.**

**Bankruptcy No. 87–02809.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 13, 1988.

Dennis J. Spyra, U.S. Trustee's Office, Pittsburgh, Pa., for U.S. Trustee.

George Mastrovich, Hyatt Legal Services, Bridgeville, Pa., for debtor.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

■ This matter comes before the court by the United States Trustee's Motion to Dismiss. The chapter 7 trustee originally moved for dismissal, but withdrew the motion upon the motion of the United States Trustee under 11 U.S.C. § 707(b), and because of lack of standing. The court finds substantial abuse, pursuant to 11 U.S.C. § 707(b), and therefore dismisses this case.

The debtor has been employed by NAPA for 10 years; his employment appears to be secure. His net monthly income is $1,370, and his monthly expenditures are minimal (because he lives with his parents). The debtor has shown an abusive pattern of spending by buying approximately eleven television sets, eight VCR's, and one stereo, through a deferred credit plan, at Kaufmann's Department Store. The debtor made those purchases, totaling $12,000, within a three-month period. The debtor owes unsecured consumer debts, totaling $38,376.44, to eight other creditors. The debtor also owns a Cadillac, which is encumbered by General Motors Acceptance Corporation, with a balance of approximately $12,000.

At the section 341(a) meeting of creditors on November 23, 1987, and at a continued meeting on December 18, 1987, the debtor alleged that the items purchased at Kaufmann's were gifts. He refused to respond to questions by creditors and the trustee about the recipients of the alleged gifts. At the continued meeting, the debtor was not forthcoming regarding his current expenses listed on the Statement of Current Income and Expenses. Although the debtor listed his expenses as $0.00 on the sched-ule, he told the trustee that his expenses ranged from $400 to $500 per month. The debtor gave non-committal answers to the trustee and did not specify his actual total monthly expenses. Even if the debtor's monthly expenses were $400 to $600, as he sometimes reports, it is clear that the debtor would have a significant amount of income to pay his unsecured debts.

There is no evidence in the record of any sudden economic hardships, serious illness, unemployment, or other unforeseeable calamities. In summary, the debtor's ability to pay a substantial portion of his debts leads this court to conclude that this case should be dismissed, based on the substantial abuse provision of 11 U.S.C. § 707(b). The fact that there is evidence of bad faith reinforces the conclusion to dismiss. Many of these acts of bad faith would constitute exceptions or objections to discharge and have their own remedies.

Section 707(b) of the Bankruptcy Code provides:

> After notice and a hearing, the court, on its own motion and not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor or under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter [7]. There shall be a presumption in favor of granting the relief requested by the debtor.

11 U.S.C. § 707(b) (Supp. III 1985).

An examination of legislative history does not provide a definition of substantial abuse. *In re Kelly*, 841 F.2d 908, 916 (9th Cir.1988). However, the purpose of the 1984 reforms to the Code was to eliminate abuse of the system by "debtors who are not suffering economic hardship" and to provide those who need it with a fresh start. *In re Grant*, 51 B.R. 385, 390 (Bankr.N.D.Ohio 1985).

Congress was concerned about debtors abusing the bankruptcy system:

> It was pointed out to me that a number of these persons taking bankruptcy had good jobs. They could pay their obli-

gations, but it was the easier route to go chapter 7 and take bankruptcy and not worry about their debts.

130 Cong.Rec. H 1812 (daily ed March 21, 1984) (statement of Rep. Montgomery); *In re Grant,* 51 B.R. 385. In addition, a comparison is made between unnecessary bankruptcies and shoplifting. 130 Cong.Rec. H 1823; *In re Grant,* 51 B.R. at 390–391. Clearly, the legislative history of section 707(b) focuses the court's attention on the debtor's actions which may constitute abuse. However, ability to pay debts is the principal focus.

The language of section 707(b) is not a model of precision. Various courts have defined substantial abuse in various ways. *In re Grant,* 51 B.R. 385, outlines how the courts have defined the meaning of substantial abuse. The interpretations of substantial abuse have ranged from the ordinary and plain meaning in *In re Bryant,* 47 B.R. 21 (Bankr.W.D.N.C.1984), to the dictionary definition in *In re Edwards,* 50 B.R. 933, 936 (Bankr.S.D.N.Y.1985), to the legislative history approach taken in *In re Kress,* 57 B.R. at 877.

■ This court will consider the following factors in determining dismissal of chapter 7 for substantial abuse. First, whether the debts constituted primarily consumer debts. Second, whether the debtor had an ability to pay his debts through a chapter 13 plan. *In re Kelly,* 841 F.2d 908; *In re Strong,* 84 B.R. 541 (Bankr.N.D.Ind.1988).

In the present case, the debts constitute primarily consumer debts. Consumer debt, as defined by section 101(7) is "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(7) (1982). Televisions, VCR's, stereos and automobiles are consumer debts; they are intended for personal and/or household purposes.

The second issue, which this court considers the primary factor to be considered, involves the debtor's ability to repay his debts through a chapter 13 plan.

In defining substantial abuse in relation to the proportion of the debt the debtor would be able to repay, the courts have used various adjectives and percentages. In defining the percentage or portion the debtor should be able to repay, adjectives range from "significant" in *In re Strong,* 84 B.R. at 545 to "meaningful" in *In re Bell,* 56 B.R. 637, 641 (Bankr.E.D.Mich. 1986) and *In re Struggs,* 71 B.R. 96, 97 (Bankr.E.D.Mich.1987), to "all or part" in *In re Antal,* 74 B.R. 8, 10 (Bankr.W.D. Miss.1987), and to "all or substantial" in *In re Hudson,* 64 B.R. 73, 75 (Bankr.N.D.Ohio 1986).

In defining the percentage of repayable debt, percentages range from 100% in *In re Day,* 77 B.R. 225, 228 (Bankr.D.N.D.1987), to 80% in *In re Newsom,* 69 B.R. 801, 805 (Bankr.D.N.D.1987), to 70% in *In re Hudson,* 64 B.R. at 75, to 68% in *In re Grant,* 51 B.R. at 388. *In re Keniston,* 85 B.R. 202, 206 (Bankr.D.N.H.1988), suggests that Congress did not intend to create a "degree of abuse concept" by including the word "substantial" in section 707(b). However, the plethora of interpretations of the term "substantial" which uses percentages suggests that the term "substantial" does have a quantitative meaning relating to the amount of repayable debt.

While this court declines to adopt a rigid quantitative test, we note that this debtor has an income of $1,370.00 per month and has low monthly expenses. After allowing for the debtor's expenses, a significant portion of the debtor's income would be available to pay unsecured creditors. The debtor is seeking to file a chapter 7 bankruptcy when he clearly has the ability to pay a substantial portion of his debts.

Some courts have used various indicia of bad faith in their analysis of substantial abuse. Some indicia of bad faith are present in this case. Initially, the debtor stated in the Statement of Current Income and Expenses that he had no monthly expenses. Upon the trustee's questioning at the December 18, 1987 section 341 meeting, the debtor testified that his total monthly expenses did not exceed $400–$500. The debtor refused to disclose the disposition of the property which he purchased. The debtor claimed to have given these items

away as gifts, but refused to name any of the recipients. The debtor has displayed a conscious disregard for the Bankruptcy Code's requirement to accurately represent financial conditions.

Some courts include in their analysis of bad faith with respect to substantial abuse the following questions:

4) Do debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition?

5) Was the petition filed in good faith? *In re Strong,* 84 B.R. 541, 545 (Bankr.N.D. Ind.1988). *See generally In re Kress,* 57 B.R. at 877–78; *In re Grant,* 51 B.R. at 392–93. The debtor in the present case did not accurately reflect his true financial condition on his Statement of Current Income and Expenses. This debtor would satisfy the bad faith factors listed in *Strong.*

Sometimes excessive lifestyles and excessive spending patterns have been considered in finding bad faith. *In re Krohn,* 78 B.R. 829, 832 (Bankr.N.D.Ohio 1987) considered the additional bad faith factors implicated by the "eve of bankruptcy purchases" and a "consistent pattern of living on credit or beyond the debtor's means." "Eve of bankruptcy" purchases are defined as purchases made 40 days prior to the filing of a bankruptcy. This characteristic also focuses on the debtor's bad faith behavior—especially his spending patterns. The *Krohn* court held that even though the debtor had no "eve of bankruptcy purchases," the debtor's excessive pattern of spending combined with his non-debtor wife and continued maintenance of credit cards in her name may be evidence of the debtor's bad faith.

In the present case, the debtor's pattern of excessive spending within a short period of time, his inaccurate report of monthly expenditures, his ambiguous answers regarding his current expenditures, and his refusal to disclose the recipients of the alleged gifts evince the debtor's lack of cooperation and disregard of his responsibilities under the Bankruptcy Code.

Sometimes the debtor's attitude toward the bankruptcy system has also been con-sidered as a factor in substantial abuse dismissals. *In re Grant,* 51 B.R. at 388, refers to the debtor's "utter disregard of sound financial planning." In *In re Antal,* 74 B.R. at 9, when the debtor was able to pay unsecured creditors, but refused because he would rather pay his relatives and other creditors, the court held that this behavior constituted substantial abuse.

This court believes the primary focus in determining whether substantial abuse exists is the debtor's ability to repay his debts. Indicia of bad faith may also be disqualifying factors in granting chapter 7 relief. The confusion arises from the imprecise wording of section 707(b), which is phrased that the "granting of relief would be a substantial abuse" of chapter 7. However, it is quite evident that in making the decision to dismiss based on substantial abuse, the primary focus should be the debtor's ability to pay. Most acts displaying bad faith have other remedies.

An appropriate order is attached.