**In re David F. ROTH and Diana J. Roth, his wife Debtors.**

**Bankruptcy No. 89–00529.**
**Motion No. 89–4987–M.**

United States Bankruptcy Court,
W.D. Pennsylvania.

Dec. 6, 1989.

George A. Miller, Pittsburgh, Pa., for debtors.

Joseph M. Fornari, Jr., Asst. U.S. Trustee's Office, W.D. Pennsylvania, Pittsburgh, Pa., for U.S. Trustee's Office.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD,
Bankruptcy Judge.

Pending before the court is the motion to dismiss this bankruptcy. The motion was filed by the Assistant United States Trustee pursuant to 11 U.S.C. § 707(b). The case was commenced on March 1, 1989, by the Debtors' voluntary petition under Chapter 7 of the Bankruptcy Code. Schedule A–3 (Creditors Having Unsecured Claims Without Priority) filed by the Debtors lists unsecured obligations totalling $61,185.68. It is undisputed that these debts, as well as the secured obligations listed on Schedule A–2, are primarily consumer debts within the meaning of 11 U.S.C. § 101(7). The original Schedule of Current Income and Current Expenditures identified certain expenses which the United States Trustee questioned and which, if deleted, result in disposable monthly income in excess of the expenditures. The motion asserts that granting a discharge to these Debtors

would be a substantial abuse of the provisions of Chapter 7.

The Debtors' response to the motion indicates that although most of the debts are consumer debts, the Debtors' financial difficulty began as a result of a failed business attempt by Mr. Roth. Further, Debtors' response asserts that the budgeted expenditures questioned by the United States Trustee are reasonable and necessary.

An evidentiary hearing was held. The basic facts, which are not disputed, follow. In 1983, David Roth terminated a partnership which had provided his sole source of income. When he attempted to establish his own business, his former partner sued him in an effort to prevent the competition. Although the litigation terminated in Mr. Roth's favor, he incurred approximately ten or eleven thousand dollars in legal fees defending the action. Debtors obtained a loan from Equibank to fund the new business and to provide a source of family living expenses until the business would show returns. As reflected on Schedule A–3, the loan balance on the filing date was $11,605.00. All of the other debts on Schedule A–3, including another owed to Equibank, were obtained by the Debtors for personal purposes, such as consolidating loans, paying bills and funding living expenses.

The business consisted of sales by Mr. Roth of the concept of self-funded health care plans to corporations, and Mr. Roth functioned as a third-party administrator for those corporations. Mr. Roth realized within five months that the new business would not succeed because the insurers refused to deal with him while the litigation was pending. As a result, in 1984 he terminated operations and obtained employment with Self–Funded Plans, Inc., and remains employed there to this day.

In 1984 Mr. Roth reported that his income was in the $40,000.00 bracket. In 1985 his income was between $47,000.00 and $48,000.00. In 1986 he earned about $50,000.00. In 1987 he suffered a decline in his income but his wife's increased and together Debtors earned in excess of $50,000.00. In 1988 Mr. Roth earned between $58,000.00 and $60,000.00 and expects to do equally well in 1989. Mrs. Roth was not employed until 1985 when she obtained work one or two days a week as a substitute teacher earning $35.00 per day.[1] In 1986 she earned $200.00 a week as a furniture sales clerk. By 1987 she was earning $13,000.00 a year. In 1988 she earned $21,000.00. She expects that her income in 1989 will be approximately $15,000.00 or $16,000.00. In 1988 the Debtors' combined annual income was between $70,000.00 and $80,000.00, and their combined income in 1989 should be approximately the same.

Debtors have three children, ages 12, 13 and 19. The eldest is now a freshman in college. His tuition is covered by scholarship. His parents fund his room and board and pay for his books. The other two children live at home. Although Mr. Roth has had some minor medical expenses related to his back, Debtors have no extraordinary or unusual problems which lead to atypical expenses for a family of this size.

At the hearing Debtors submitted an Amended Schedule of Current Income and Expenses reflecting their post-petition financial situation. Many of the expenditures itemized are fair and reasonable. The United States Trustee's Office, however, continued to question several items which will be treated *seriatim*. The first is a voluntary payroll deduction by Mr. Roth of $150.00 a month which is deposited into a 401–K Plan.[2] Second, Mrs. Roth reflected a bi-weekly expenditure of $14.40 identified as "car". At the hearing she testified that the $14.40 was a one-time reimbursement to her for automobile expenses and its inclusion as a bi-weekly deduction was an error.

In addition, Debtors have budgeted a $100.00 a month for recreation. Debtors'

---

1. Although Mrs. Roth is certified as a music teacher, she has not been able to find a fulltime teaching position and currently works as an interior designer for Ethan Allen Manor House.

2. The deductions listed indicate $75.00 because Mr. Roth is paid semi-monthly. To afford consistency in analysis, all of the figures used herein will be computed on a monthly basis.

monthly expenses also reflect expenditures for college visits and application fees and piano lessons totalling $190.88 per month. Debtors testified that they no longer incur either of the latter expenses although, if they had the cash available, they would like to provide piano lessons for their daughter.

Debtors' budget also reflects a payment to Equibank in the amount of $530.00 and a payment listed as "all other accounts" of $1,810.00 which Debtors testified represented the monthly amounts they owe their pre-petition unsecured creditors.

As indicated earlier, Debtors' budget contains other matters not challenged by the trustee, such as: cable TV, $13.00 a month; hair cuts, $40.00; work lunches for husband and wife, $220.00; house maintenance and repairs, $75.00; car payment, $196.00; college expenses for their son, $497.00; clothing, $200.00; food, $680.00; newspaper and periodicals, $20.00; laundry and cleaning, $25.00; automobile and life insurance, $261.00; transportation, not including the automobile payment, but including certain expenditures for repairs which Debtors recently incurred, $150.00; and medical expenses of $150.00.[3] In addition the Assistant United States Trustee makes no challenge to any of the payroll deductions other than the 401–K Plan of the husband-debtor.[4]

Debtors' Amended Schedule of Income and Expenses lists total monthly expenses of $6,470.88 which include payments on all their secured debts. Debtors' monthly expenses are reduced to $3,690.00 when the following items are subtracted from that sum: $1,810.00 in other debts; $530.00 Equibank debt; $150.00 401–K Plan; $116.88 college visits; $74.00 piano lessons; $100.00 recreation expenses. When the aforementioned $14.40 bi-weekly expense is added to Mrs. Roth's income, her monthly take-home income is $1,346.76. The couple's total monthly take-home income is correctly stated at $4,424.30. Compared with the $3,690.00 a month needed to fund the household, Debtors have an excess of income over expenditures of $734.30 per month. Over a 36–month period Debtors would have available $26,434.80 to pay unsecured creditors. Thus, in three years, Debtors could repay these creditors 43 percent of the amount they owe.

Although the parties agree upon the above stated facts, they dispute the legal standard by which the court should determine whether granting the relief the Debtors request in this case would be a substantial abuse of the Bankruptcy Code. Debtors' attorney argues that to impose any standard other than the ability to repay 100 percent to creditors is to emasculate the provisions of Chapter 7. The Assistant United States Trustee points out that several other courts have examined the issue and have not used such a restrictive standard.

Apparently the first opinion by a Court of Appeals to address the subject was *In re Kelly*, 841 F.2d 908 (9th Cir.1988), wherein the court noted that the purpose of the 1984 revisions to the Bankruptcy Code was to eliminate abuse of the system by debtors who are not suffering economic hardship while providing those who need it with a fresh start. Further, several courts have noted that the primary focus of analysis regarding a § 707(b) question is on the debtor's ability to pay some portion of their debts. *See, e.g., In re Andrus*, 94 B.R. 76, 78 (Bankr.W.D.Pa.1988); *In re Grant*, 51 B.R. 385, 390 (Bankr.N.D.Ohio 1985); *In re Strong*, 84 B.R. 541 (Bankr.N.D.Ind.1988).

---

**3.** Both Debtors testified that each of their employers provide health care plans. However both have deductibles which must be met prior to the time that the insurance carrier pays any of the medical expenses. As a result, Debtors have budgeted $150.00 a month for medical care not covered by insurance which we find is reasonable in light of Mr. Roth's back problems. Regarding the transportation expense, we note it should not be a monthly expense of $150.00 inasmuch as such repairs are not usually required that frequently.

**4.** David Roth acknowledged that he also contributes to the Social Security System but indicated his belief that the amounts provided by that system would not be adequate to fund his retirement. Therefore, he contributes $150.00 a month into a 401–K Plan. However, this expense is not necessary to fund present needs.

In *In re Andrus, supra,* which originated in this district, Chief Judge Cosetti noted:

> This court will consider the following factors in determining dismissal of Chapter 7 for substantial abuse. First, whether the debts constituted primarily consumer debts. Second, whether the debtor had an ability to pay his debts through a Chapter 13 plan. (Citations omitted.)

94 B.R. at 78. Both of these factors have been established in this case. The Debtors concede that their debts are primarily consumer debts, having been used for personal, family and household purposes. Debtors' income permits them to fund a Chapter 13 Plan and over the three-year life of a plan they could repay 43 percent of their unsecured debts and remain current on their secured debts.

Judge Cosetti further "decline[d] to adopt a rigid, quantitative test" to define substantial abuse. *Id.* He noted that the percentage of repayable debt authorized by courts covers a wide range but that no court has held that there is a quantitative definition to be applied to the amount of repayable debt. On the facts of this case this court agrees and finds that a quantitative test is inappropriate. Debtors' schedules reflect that much of the debt was incurred from approximately 1987 through 1988. In that time period, although the Debtors had income of $50,000.00 to $80,000.00 per year, they spent substantially more than they earned. Debtors have the ability to repay a substantial portion of their debt and not to do so constitutes an abuse of the Bankruptcy Code.

In arriving at this decision we are cognizant that the Assistant United States Trustee has not raised an issue of bad faith and the Debtors do not appear to be acting in bad faith in this bankruptcy proceeding or its filing. The Debtors have been forthright in acknowledging their income and their expenditures but bad faith is not a required element in a § 707(b) analysis. Our opinion, therefore, is based entirely on the Debtors' ability to repay a high percentage of their debts based on a consider-able excess of monthly income over expenses, many of which are for luxuries (*e.g.,* cable, recreation, 401–K), and are primarily of a consumer nature.

An appropriate order will be entered.

## ORDER

And now, to-wit, this 6 day of December, 1989, for the reasons set forth in the attached Memorandum Opinion, it is hereby ORDERED that the motion of the Assistant United States Trustee pursuant to 11 U.S.C. § 707(b) to dismiss this case is GRANTED. However, the order is stayed for fifteen (15) days to enable Debtors, if they choose, to convert this case voluntarily to a Chapter 13. Upon filing of the appropriate Chapter 13 plan and documents within fifteen (15) days, this order will be null and void and of no effect. If the documents are not filed within fifteen (15) days, on the sixteenth (16th) day the Clerk shall notify all creditors and parties in interest that this case has been dismissed and that creditors may pursue their non-bankruptcy remedies, and shall close the case accordingly.